## FOSTER *v.* STATE.

No. 39575          February 7, 1955          77 So. 2d 685

*William V. Murry,* Hattiesburg, for appellant.

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

Holmes, J.

The appellant was tried in the Circuit Court of Marion County on an indictment charging him with the murder of John Coleman. The jury found him guilty as charged and fixed his punishment at life imprisonment in the State penitentiary, and he was sentenced accordingly. He prosecutes this appeal from the judgment of conviction, contending (1) that the trial court erred in denying his request for a peremptory instruction, and (2) that the trial court committed prejudicial error in admitting over the objection of the appellant certain evidence which will be hereinafter more specifically referred to. We state briefly the facts as disclosed by the evidence for both the State and the appellant.

The homicide occurred at about noon on October 6, 1953, in Cooks' Quarters in the City of Columbia. Among others living in the vicinity in separate houses were Effie Pace, Ouida Morgan, and the appellant and his wife and child. Effie Pace ran a cafe and boarding place at her home and a rooming place in a house close by. The deceased was a stranger in the community. He had rented a room from Effie Pace on Thursday preceding the Tuesday on which the killing occurred. The appellant shot him with a rifle, inflicting a wound just below the left breast, from the effects of which he died in a few minutes. The appellant fled the scene and hid in the woods until night, and then made his way by a circuitous route to New Orleans. He remained in New Orleans until sometime in January, returning in the night time to Columbia on two occasions. On his second return, he was apprehended by the officers and arrested and placed in jail.

On the morning of the homicide, the appellant had been sitting on his porch cleaning his rifle, preparatory, as he said, to engaging in target practice at the river which was only a short distance away. His wife was absent picking cotton. He was at home alone with his small son about six years old. Later he accompanied his son to Effie Pace's cafe and boarding house, leaving the rifle at home. He bought his son a soft drink and then started back to his home. On his way back, he stopped in the home of Ouida Morgan where he saw the deceased but had no conversation with him. He was asked by Ouida Morgan to have a seat but declined and then went around to the back of the house where he and his son engaged in playful antics with a small chicken, referred to in the evidence as a "biddie." Appellant called to Ouida Morgan, saying, "you all have this biddie where he will fight." Ouida replied, "Butler Morgan has got it where it will fight." The deceased then appeared at the back door and said, "if you want to fight, I will fight you," putting his hands in his pockets. The appellant replied that he did not want to fight. The deceased then remarked, "wait until I get back." The appellant then went to his home and returned shortly with his rifle. When he reached a point near Effie Pace's house, the deceased came out of his room door. According to the testimony of the appellant, the deceased put both hands in his pockets and started to advance on him. The appellant testified that he stopped him and asked him if he, the deceased, got what he went for, and the deceased said he did and the appellant shot him. The appellant contends that the shooting was in self defense. He testified, however, that while he had seen the deceased with a knife that morning, he did not know what he had in his pockets at the time he shot him. On a prior habeas corpus hearing, he testified that the deceased was 35 or 40 feet from him when he shot him. After the shooting, a spring blade knife

was found lying about eight or ten inches from the body or hand of the deceased. Ouida Morgan testified that the knife belonged to her. After the appellant was arrested, he made a voluntary statement to the officers which was reduced to writing and signed by him, and the material parts of which are as follows:

"The day I shot the fellow I got up about 8:30 A. M. After I gave my baby something to eat he went over to Dick Rogers and I stayed on my porch and greased my rifle. Later the baby came back and wanted a bottle of pop. We went to Effie Pace's to get the pop. We listened to a record play and started back to the house and found the biddie out back of Ouida and Butler Morgan's back yard. I started meddling with the biddie and said to Ouida, "you'll done got this biddie where he'll fight." Ouida said "yes." This fellow came up and said "yes, God Dam it I'll fight." I said I was not talking to you. He said I was lying and came toward me. I said I don't want any more scars on me. He said you wait till I come back. I walked to my house and got my rifle and then went to Effie's front door. In just short time he came out and I asked did he have what he went after. He said you dam right and I shot him. Effie hollered don't shoot him any more just as I started to reload it."

■■ ■ Under the evidence it was a question for the jury to determine whether the appellant was justified in shooting the deceased on the ground that he believed, and had good reason to believe, that at the time he fired he was in danger of losing his life or suffering great bodily harm at the hands of the deceased. Spivey v. State, Miss., 47 So. 2d 855. The jury determined this question adversely to the appellant and, in our opinion, were amply warranted under the evidence in so doing. We, therefore, find no error in the action of the trial court in denying the appellant's request for a peremptory instruction.

██ The appellant next complains that the trial court erred in admitting over the appellant's objection the testimony of the State's witness, Minnie Jenkins, wherein she testified that she heard Effie Pace say that she, Effie Pace, heard the defendant say, "if he (the deceased) carries those fish where he thought he was going to carry them, I am going to 'mess him up'."

The appellant's complaint as to the admission of the aforesaid testimony of the State's witness, Minnie Jenkins, arises out of the following, as disclosed by the record. When Effie Pace, a witness for the appellant, was on the stand she was asked on cross-examination if A. C., meaning the appellant, didn't tell her that if John, meaning the deceased, took those fish where he thought he was going to take them, he was going to kill him. She denied that the appellant made this statement to her, and denied that she told Minnie Jenkins, Ouida Morgan, or anyone else, that the appellant made this statement to her. It was competent for the State to contradict Effie Pace as to this testimony. While the State would not have been permitted to show by other witnesses as an original proposition that Effie Pace said that the appellant told her that if the deceased took those fish where he thought he was going to take them, he was going to kill him, it was competent for the State to contradict Effie Pace as to her testimony. The State sought to so contradict Effie Pace by two witnesses, namely, Ouida Morgan and Minnie Jenkins. Ouida Morgan was asked by the State on the witness stand if Effie Pace didn't tell her that she heard the appellant say that if the deceased took those fish where he thought he was going to take them, he was going to kill him. Ouida testified that Effie didn't say that to her but that she said it to her neighbor, Minnie Jenkins, thus contradicting Effie after a predicate had been properly laid for the contradiction. The State introduced Minnie Jenkins in rebuttal, and asked her if it were not a fact that Effie had

made the statement to her as to what the appellant said, and Minnie Jenkins replied that she didn't make it to her but she was talking on her porch to somebody else. Minnie was then asked what Effie said, and she replied, over the objection of the appellant, "she said that A. C. said that if he carried those fish where he thought he was going to carry them, I am going to mess him up."

It is now argued by the appellant that the court erred in permitting Minnie Jenkins to testify that Effie said that A. C. told her that if he took those fish where he said he was going to take them, he was going to mess him up, for the reason that no predicate was laid therefor, since the statement ascribed to A. C. in laying the predicate was, "I am going to kill him." However, the State had theretofore, through the witness Ouida Morgan, elicited evidence in exact contradiction of Effie Pace in accordance with the predicate laid, and since the evidence was already before the jury that Effie Pace had said that the appellant told her that if the deceased took those fish where he said he was going to take them, he was going to kill him, it could have resulted in no prejudice to the appellant that the witness Minnie Jenkins was permitted to quote Effie as saying that A. C. had told her he was going to "mess him up", since this latter statement was a milder statement and less prejudicial than the statement "I am going to kill him." We are accordingly of the opinion that the admission of the testimony complained of constitutes no reversible error.

Reviewing the record as a whole, it discloses an unjustifiable and wholly unnecessary killing. A careful examination of the record reveals that it is free from reversible error. It follows, therefore, that the judgment of conviction must be, and it is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.